MARTIN, Appellant, v. WITTY et al., Respondents.

St. Louis Court of Appeals, February 2, 1904.

1. **EVIDENCE: Escrow.** When a written undertaking is deposited in the hands of a third party, to be held by him until some condition is performed before delivery, parol evidence is admissible to show the performance of the condition for the purpose of showing that the contract may be enforced.

2. ————: ————. **Parol Evidence to Vary Written Contract.** But parol evidence is not admissible for the purpose of engrafting upon the contract a condition of delivery which, in fact, is an essential condition of the contract itself, one which would vary its terms.

(Dissenting Opinion by Goode, J.)

3. **CONTRACT: Delivery.** If a contract is delivered to the obligee, it takes effect at once as a complete contract, no matter what parol conditions were attached to it and these can not be shown.

4. ————: ————: **Escrow.** But if, instead of being delivered to the obligee, a contract is deposited with a third party, it is permissible to show by oral testimony that it was deposited as an escrow and was not to take effect until a certain parol condition was complied with.

5. ———: ———: ———. Under the evidence in this case, which is examined at length, it was a question for the jury whether the contract sued on was delivered.

Appeal from Scotland Circuit Court.—*Hon. E. R. McKee,* Judge.

REVERSED AND REMANDED (*with directions*).

*Berkheimer & Dawson* for appellant.

(1) The contract in evidence provided that the five hundred dollars was to be paid upon a certain date, to-wit: the first day of May, 1901, this being the case, it was an independent and absolute promise to pay the amount on that date. Overton v. Curd, 8 Mo. 420; Portage v. Cole, 1 Saunders 320, note 1. (2) When (as in this case), the promises of both parties are absolute and independent of each other, upon a breach of his promise by one party, the other may sue him without averring that he has performed his own promise and it is no defense to such action for the defendant to plead that the plaintiff has failed on his part to perform his part of the agreement. American and English Cy. of Law (1 Ed.), page 909, title Contracts; Thorp v. Thorp, 12 Mo. 455-564; Cases cited to support the text; Underhill v. Saratoga and W. R. Co., 20 Barb. 455; Edgar v. Boyes, 11 S. & R. (Pa.) 445; 7 Am. and Eng. Ency. Law (2 Ed.), page 119, title Contracts, note 1, cases cited; Wheler v. Garsge, 28 N. Y. Superior Ct. 280; Payne v. Bettisworth, 12 A. K. Marsh, 9 Ky. 427; Smith v. Betts, 16 How. Prac. 251; Fire Ins. Co. v. Butler, 34 Me. 451; Sherwin v. Railroad, 24 Vt. 347; State v. Railroad, 21 Minn. 472; Goodwin v. Holbrock, 4 Wend. 377; Schenectady County Suprs. v. McQuien, 15 Hun 551; Havens v. Bush, 2 Johns. 387; Stephenson v. Kleppinger, 5 Watts. 420; Goldsborough v. Orr, 21 U. S. (8 Wheat.) 217; Logan v. Hodges, 6 Ala. 699; Taylor v. Patterson, 3 Ark. 238; Beryman v.

Hewitt, 29 Ky. 6 J. J. Marsh 462; McMath v. Johnson, 41 Miss. 439; Robinson v. Harbor, 42 Miss. 795, 97 Am. D. 501; Turner v. Mellier, 59 Mo. 526; Burris v. Schrewsberry Park Land & Improv. Co., 55 Mo. App. 381; Putman v. Mellen, 34 New Hamp. 71; Slocum v. Despard, 8 Wend. 615; Hard v. Sealy, 47 Barb. 428. (4) Where it appears by the terms of the agreement that the performance of one party to precede that of the other, an action can be maintained against him who was to do the first act, although nothing had been done by the other. Meredian Brittania Co. v. Zingenson, 48 New York 247 (8 A. D. 549). (5) One may maintain an action on a contract without having performed a covenant on his part where it goes only to a part of the consideration, and a breach may be compensated in damages, such as a covenant being an independent covenant. Obermyer v. Nichols, 6 Bin. 159 (6 Am. Dec. 439); Quinlin v. Davis, 6 Whart. 169; Adrain v. Lane, 13 S. C. 183. (6) This being a contract for the sale of an interest in lands, must all be in writing. Clearwater v. Tethrow, 27 Mo. 241; Rosenberger v. Jones, 11 Mo. 559; Andrews v. Broughton, 78 Mo. App. 179; Cunningham v. Rousch, 157 Mo. 336.

*Mudd & Pettingill* and *Smoot, Boyd & Smoot* for respondents.

(1) (a) Oral testimony is competent to show whether an instrument is in escrow. (b) If instrument is in escrow parol evidence is competent to show conditions on which it becomes binding. Wharton's Law of Evidence, sec. 930; Underhill on Evidence, sec. 212, p. 311. (2) And oral testimony is competent to show there was no absolute or final delivery by the party sought to be charged. Shelton v. Durham, 7 Mo. App. 585. (3) (a) A written instrument is never delivered until the obligor is divested of all dominion and control over it. (b) Delivery is essential to, and is

the crowning act of the execution of a written instrument. There must be mutuality of minds on the delivery and the execution of an instrument as well as to the contents. The courts hold and say that there must not only be a delivery, but an intention to deliver by one having a right to deliver before an instrument becomes binding. Carter v. McClintock, 29 Mo. 464; Ayers v. Milroy, 53 Mo. 516, 521. And the only infallible test of the delivery of an instrument is that the maker parts with the instrument, parts with the dominion and control of it, and it is accepted by the other party. Mudd v. Dillon, 166 Mo. 110, 119; Huey v. Huey, 65 Mo. 689; Hamerslough v. Cheatam, 84 Mo. 1; Abbe v. Justus, 60 Mo. App. 300, 306; Rogers v. Carey, 17 Mo. 232, 234, 235 and 236.

BLAND, P. J.—One Ward made his appearance in Monroe county, Missouri, having in his possession fraudulent abstracts of titles to lands claimed to be situated in the State of Georgia, and designated as head right lands. Relying upon the abstracts, several gentlemen in Monroe county were induced to trade in these lands. J. M. Jayne acquired a deed to the lands and conveyed them to T. R. Senter. Senter, for a valuable consideration, conveyed them to plaintiff who, after receiving his deed, went to the State of Georgia to look up the lands and the title. He ascertained that the abstracts of title were fraudulent and that the head right through which the pretended title was derived had been fraudulently surveyed and the survey declared void and set aside more than one hundred years before the making of the abstracts, as is shown by the following certificate in respect to the title to the lands:

"State of Georgia.

"Office of Secretary of State.

"I, Philip Cook, Secretary of State of Georgia, do hereby certify: That the grants of land to John Hanson in Franklin county, Georgia, one for two thousand

acres and the other for five thousand acres, both grants in the year 1787, were based on fraudulent surveys and were declared null and void by an act of the General Assembly of Georgia, approved December 28, 1794, as shown by the records in this department.

"In Testimony Whereof, I have hereunto set my hand and the seal of my office, at the capitol in the City of Atlanta, this twenty-second day of June, in the year of our Lord one thousand nine hundred and one and of the independence of the United States of America the one hundred and twenty-fifth.

"Philip Cook,
"Secretary of State.

"Seal of Georgia."

After learning that he had no title plaintiff returned to Missouri and made a demand on Jayne and the real estate agents who had figured in the sale of the lands, informing them of the swindle that had been perpetrated. These gentlemen, in compromise and settlement of the matter with plaintiff, entered into the following contract:

"This contract, made and entered into this twenty-seventh day of February, 1901, by and between A. J. Martin, of Clark county, Missouri, party of the first part, and Lee T. Witty, P. G. Carder and T. J. Brumback, of the county of Scotland, State of Missouri, parties of the second part, witnesseth: That the party of the first part for and in consideration of the sum of five hundred dollars to be paid as hereinafter set forth, agrees to make his quitclaim deed to the south one hundred and eighty acres, the north one hundred and sixty acres of the east five hundred acres of a tract of land known as the John Hanson grant, being the lot known as the grant No. 86, and deeded to party of the first part by Thomas R. Senter and wife, said deed to be made to John M. Jayne and wife. This five hundred dollars is to be paid by parties of the second part on or before

the first day of May, A. D. one thousand nine hundred and one (1901). Party of the first part accepts said five hundred dollars in full of all demands of each and every kind by reason of any and all trades made by him throught parties of the second part. This contract to be deposited with the Farmers' Exchange Bank of Memphis, Mo.

> "A. J. Martin.
> "Lee T. Witty.
> "P. G. Carder.
> "T. J. Brumback."

Plaintiff made the quitclaim deed as agreed and forwarded it to the Farmers' Exchange Bank of Memphis, Mo. The cashier of the bank notified Jayne on several occasions that the deed was at the bank, but Jayne did not call for it. The contract was not deposited with the bank as was agreed, but was handed to Jayne who retained it in his possession and produced it at the trial. Carder, Jayne and Witty, over the objections of the plaintiff, testified that one of the conditions of the contract was, that plaintiff should furnish proof that there was no such land as described in the abstracts and in his deed in the State of Georgia, and that the contract was not to be delivered until this condition was complied with. The verdict was for the defendant. Plaintiff appealed.

Plaintiff assigns as error the admission of parol evidence to vary the terms of the contract. On the erroneous assumption that the contract was to be held in escrow by the bank, the defendants were permitted to offer parol evidence to show that all the terms agreed upon between the parties were not written in the contract. When a written undertaking is deposited with a third party to be held by him until some act is done, or some condition is performed, parol evidence is admissible to show the act and its performance, or to show performance of the condition for the purpose of showing

that the party suing is entitled to enforce the contract. But parol evidence is not admissible for the purpose of engrafting upon the contract itself an essential condition thereof, or to vary its terms. Such evidence would violate the well-settled rule that parol evidence is not admissible for the purpose of varying, contradicting, adding to or subtracting from the terms of a written contract that is complete in itself. The contract sued on shows on its face that it was not to be deposited with the bank in escrow, but for the convenience of the parties and for the purpose of making the bank the medium through which the deed to Jayne should be delivered and the five hundred dollars paid to plaintiff when he should make and deliver the deed to the bank. Plaintiff complied with the terms of the contract on his part by executing and delivering the deed to the bank to be delivered by it to Jayne and having complied with the contract on his part, the defendants became legally bound to pay him the five hundred dollars. They have failed to perform this obligation and the record shows they have interposed no legal or equitable defense to the plaintiff's demand. The judgment is therefore reversed and the cause remanded with directions to the circuit court to enter judgment for plaintiff for five hundred dollars with six per cent interest thereon from the date of the commencement of the suit to the date when judgment shall be entered. *Reyburn, J.,* concurs; *Goode, J.,* dissents.

GOODE, J. (Dissenting).—The decision of this case, in my opinion, turns principally on the fact that the contract sued on was not delivered to either of the obligees, but was deposited with the Farmers Exchange Bank. If a contract is delivered to the obligee it takes effect at once as a complete contract, no matter what parol conditions were attached to it and these can not be shown. Price v. Ins. Co., 54 Mo. App. 119; Cox v. Parker, 49 N. Y. 107; Brayman v. Bingham, 26 N. Y. 483;

Miller v. Fletcher, 27 Gratt. 403. But if instead of being delivered to the obligee, a contract is deposited with a third party, it is permissible to show by oral testimony that it was deposited as an escrow and was not to take effect until a certain parol condition was complied with. Shelton v. Durham, 7 Mo. App. 585; Barclay v. Wainwright, 86 Pa. St. 191; Beall v. Poole, 27 Md. 645; Murray v. Stair, 2 Barn. & Cress. loc. cit. 85, 86. This is an entirely different matter from engrafting a parol stipulation on a written instrument. The latter act would change a completed contract which the parties have put in writing; the former simply shows when and on what condition the contract was to become binding.

The majority opinion concedes this may be done, but holds that the contract in question showed on its face that it was to be delivered as a complete obligation. I do not read it that way. All it says on the subject is that "This contract to be deposited with the Farmers Bank of Memphis, Missouri." That bank was not a party to the contract and a mere recital that the contract was to be deposited with it can not be construed as conclusive that the contract was delivered to take effect immediately. It was competent to explain by oral testimony the condition on which it was deposited with the bank. As a specimen of the oral testimony on the subject, I make this extract from the testimony of Lee Witty:

"Q. I will ask you if that contract was ever delivered? A. Never.

"Q. I will ask you if that contract was ever delivered? A. No, sir.

"Q. Why not; you can't state the reason? A. Because Mr. Martin did not fulfill his part of the contract.

"Q. What is it that he was to do before the delivery? A. It was to furnish Mr. Jayne the necessary proof that that was no land in existence. He had in his possession a satchel full of papers showing there was no land there of that description.

"Q. You say that was to be done before it was to be delivered? A. It was contingent upon it.

"Q. When was it to be? A. Right away. . .

"Q. Mr. Witty, when did you have such a conversation with Mr. Martin? A. That was during the day or evening he was there when this instrument was written."

*P. G. Carder* testified as follows:

"Q. Was that contract ever delivered Mr. Carder? A. No, sir.

"Q. To Mr. Martin, or anybody for him? A. It was never delivered to my knowledge.

"Q. I will ask you what was to be done before it was delivered? A. Why, Mr. Martin stated that he had information showing that that was no land in Georgia and all that kind of stuff, and Mr. Jayne agreed to pay him $250 of this money.

"Q. In which conversation Mr. Peter Jayne asked if Mr. Martin had furnished that evidence of the failure of the title? A. Yes, sir.

"Q. That is the reason it was made? A. Yes, sir; Mr. Jayne offered right then and there to make it good if he would furnish that information that night; he would give him a check for $100 right that minute; and that I will swear to on any witness stand on earth."

Other witnesses swore to the same effect. Besides, Martin, the plaintiff, wrote a letter after the contract was signed which tends to show that it was not to take effect at once as a settlement of their dispute, as he declared in it that nothing was settled. The letter was as follows:

"February 27th, 1901.

"Mr. E. R. Bartlett.

"Dear Sir: Please do not mention my name in any of your remarks as we are trying to unravel the mystery of the Georgia land deals. We propose to go to the bottom before we quit and you will please keep quiet on this subject. We have not settled any matter yet;

we are trying to find the guilty parties, which I trust we will before we quit.  It is late so I could not see you.

"A. J. MARTIN."

I think the foregoing evidence was sufficient to send the case to the jury on the issue of whether the contract was finally delivered when it was deposited with the bank, or whether there was anything more to be done before it was delivered.  It appears that Martin claimed he had a document which would show there was no such land in Georgia as he had bought—the same document he offered in evidence in this case.  Perhaps if he had produced that document, the defendants would have reimbursed him without a lawsuit.  At all events, I think it was competent to show by oral testimony he was to do so before the contract was to take effect.  The evidence, if believed, required him to make a reasonable showing that he had acquired no title to the land he had bought; and this was a reasonable requirement, when he was demanding repayment of the purchase money.  The court adopted that theory and gave several instructions to the jury declaring it as the law of the case, of which the following is an example:

"Gentlemen, although you find and believe from the evidence in the cause that the defendants signed the contract in question and agreed to deliver the same to the Farmers' Exchange Bank, yet if you further believe that it was agreed between the parties, plaintiff and defendants that said contract should not be binding and operative until the plaintiff furnished satisfactory evidence of the falsity of the title to the Georgia lands and that he did not furnish such proof of said false title, then said contract is not binding upon said defendants, and in that event your verdict should be for the defendants and may be in the following form, 'We the jury find for the defendants,' and sign it by your foreman."

It seems to me this case was fairly tried and for that reason I respectfully dissent from a reversal of the judgment.