BERTIG-SMYTHE, Appellant, v. BONSACK LUMBER COMPANY, Respondent.

St. Louis Court of Appeals, April 18, 1905.

CONTRACTS: Ambiguity: Parol Evidence.  A mortgagee of lumber accepted an order signed by the mortgagor reading as follows: "Please pay to B. S. C. Three Hundred ($300) Dollars, the amount of my account with them.  With all overplus on lumber when shipped."  The order was ambiguous in that it might be construed that $300 was to be paid unconditionally or out of any surplus on the lumber after it was shipped, and, therefore, parol evidence was admissible to show the sense in which it was used by the parties.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

AFFIRMED.

*Block, Sullivan & Erd* for appellant.

(1) The order imports a consideration. Taylor v. Newman, 77 Mo. 257. (2) Defendant's answer admits that it accepted the order. Stubbs v. Railway, 58 Mo. App. 192; McCord v. Railway, 21 Mo. App. 95; Bank v. Stone, 93 Mo. App. 29; Howell v. Caryl, 50 Mo. App. 456; Cross v. Railway, 71 Mo. App. 585; s. c. 141 Mo. 145, 42 S. W. 675. (3) Its agent's authority to accept the order was shown. Hackett v. Van Frank, 105 Mo. App. 384, 79 S. W. 1013; Green v. Van Norman, 83 Mo. App. 568; McLaughlin v. Barker, 64 Mo. App. 523; Porter v. Woods, 138 Mo. 551, 39 S. W. 794. (4) The interpretation of the order was a question for the court. Fagin v. Connolly, 26 Mo. 94; Gas Co. v. St. Louis, 46 Mo. 121; Burress v. Blair, 61 Mo. 133; Shickle v. Iron Co., 84 Mo. 161; Fruin v. Railway, 89 Mo. 357; Brannock v. Ellmore, 114 Mo. 55, 21 S. W. 451; Vastine v. Wyman, 5 Mo. App. 598; State to use v. Donnelly, 9 Mo. App. 519; Wire Co. v. Broderick, 12 Mo. App. 378; Michael v. Ins. Co., 17 Mo. App. 23; Brewing Co. v. Finnell, 39 Mo. App. 276; Hunt v. Hunter, 52 Mo. App. 263; James v. Bottle Co., 69 Mo. App. 207. (5) And parol evidence as to what the parties understood or intended may not be resorted to. Blakely v. Bennicke, 59 Mo. 193; Johnson Co. v. Wood, 85 Mo. 513; Miller v. Lighting Co., 133 Mo. 205, 33 S. W. 71; Shickle v. Iron Co., 10 Mo. App. 241; Thompson v. Thorne, 83 Mo. App. 241; Martin v. Witty, 104 Mo. App. 262, 78 S. W. 829.

*Rassieur, Schnurmacher & Rassieur* for respondent.

(1) Where the language of the contract is ambiguous, and the sense in which a word is used cannot be ascertained from the instrument itself, parol evidence is admissible, not to contradict the instrument, but to aid

in its interpretation. Arnoldia v. Childs, 70 Mo. App. 530; Newberry v. Durand, 87 Mo. App. 290; Deutmann v. Kilpatrick, 46 Mo. App. 624; Ellis v. Harrison, 104 Mo. 270, 16 S. W. 198; Wilcox v. Baer, 85 Mo. App. 587; Laing v. Holmes, 93 Mo. App. 231; Elevator Co. v. Mertz, 80 S. W. 684. (2) Where the language of the contract is not clearly expressed, the court should construe the contract as the parties themselves construed it.

## STATEMENT.

In 1902 J. D. Woodburn owned and operated a saw-mill at Blythesville, Arkansas, and in May of that year sold the defendant (a Missouri corporation doing business in the city of St. Louis,) lumber, which he was to manufacture. In June, 1902, the contract was modified in respect to the time of delivery of the lumber and its inspection. On account of the failure of the railroad company to complete a piece of its road as early as was anticipated, the lumber could not be shipped from the mill to the defendant and Woodburn became indebted to his mill employees and for stumpage in the sum of about fourteen hundred and forty-two dollars, and applied to the defendant for financial aid. In December, 1902, defendant sent its city salesman, David Lynn, to Blythesville with instructions to look into Woodburn's affairs and if he found sufficient lumber on hand to pay his labor debts, not to exceed the sum of fifteen hundred dollars, defendant would advance the money for the purpose of paying these debts. After inspecting the lumber and ascertaining the amount Woodburn owed his employees, Lynn agreed to pay these debts, provided Woodburn would give defendant a mortgage on the lumber then in his yards and the mill as security. The mortgage was given as requested and the labor and stumpage debts of Woodburn, aggregating fourteen hundred and forty-two dollars, were paid by drafts drawn on defendant by Lynn

in favor of the individual employees to whom Woodburn was indebted. Woodburn was also indebted to the plaintiff, an Arkansas corporation, doing a mercantile business at Paragould, Arkansas, in the sum of three hundred dollars, on account of merchandise furnished Woodburn's employees on his orders. Plaintiff was anxious to have this account settled and negotiations looking to that end were had between Woodburn, the plaintiff, and Lynn, culminating in the execution and delivery of the following instrument:

"Blythesville, Ark., Dec. 17, 1902.

"Mr. David Lynn:

"Please pay to Bertig-Smythe Company three hundred ($300) no-100 dollars, the amount of my account with them. With all overplus on lumber when shipped.

"J. D. WOODBURN.

"Accepted as per above.

"The BONSACK LUMBER COMPANY,

Per D. A. LYNN."

The answer was a general denial and the following special defense:

"Further answering, the defendant says that under the terms of said order the defendant became obligated to pay said sum of three hundred dollars only out of the surplus, if any, which might become due said Woodburn on certain lumber shipped by him to the defendant, but defendant states that nothing ever became due said Woodburn upon said shipments of lumber, and that nothing is now due him from the defendant, and that for this reason also the defendant is not indebted to the plaintiff."

It is admitted that nothing ever became due from defendant to Woodburn, as a surplus or overplus of lumber furnished under his contract with defendant, and it is also admitted that, after a sale under the mortgage, on settlement between Woodburn and defendant, it was found that Woodburn was indebted to the defend-

ant in the sum of six hundred and eighty-three dollars.

The trial court held that the order sued on is ambiguous and, over the objection of the plaintiff, admitted parol evidence for the purpose of explaining the ambiguity. On the part of the defendant, the evidence tends to show that Lynn's authority to pay the debts of Woodburn was expressly confined to labor and stumpage debts and to an amount not to exceed fifteen hundred dollars. He was not an officer of or stockholder in defendant corporation, but was employed as city salesman and was occasionally sent out on special duty under special instructions.

Lynn's evidence in respect to the order is substantially as follows: Woodburn and Edward Treller, an officer of the plaintiff corporation, spoke to him about the indebtedness of Woodburn to the plaintiff and were anxious to have it settled. Lynn informed Treller of his instructions and that the labor debts would about equal the amount he was authorized to pay out, but there was a large amount of lumber on hand and there might be a surplus coming to Woodburn when the lumber was shipped in. It was then agreed that Woodburn should give the order to be paid out of any overplus that might be found due him after the lumber should be shipped, and he accepted the order with this understanding. Woodburn, Treller and another officer of the plaintiff gave a different version of the transaction. Treller's evidence is as follows:

"I went to Mr. Woodburn and asked him for the amount due us, and he told me that Mr. Lynn had instructed him to give an order for the amount, and that Bonsack Lumber Company would accept it, and pay it, so I took the order to Mr. Lynn and he accepted the order, signed Bonsack Lumber Company, per D. A. Lynn, and told me that this amount would be paid by them the first day of February at the latest, that is, February 1903, as the lumber was on the ground and cars were very scarce, and that he would remain in that part of

the country until the lumber was shipped out, and that there was no danger of anybody losing anything for they had made a close estimate of the lumber, and that the stuff was there to pay for it, and all that was necessary was to get the lumber out, and as soon as he could secure enough cars, which would be perhaps a month or two, that same would be paid."

Witness further testified that Woodburn was given credit for the three hundred dollars, but afterwards paid plaintiff fifty dollars, which was credited to his account, and his actual indebtedness to plaintiff is now two hundred and fifty dollars.

Bertig, the other officer of plaintiff, testified as follows:

"Mr. Lynn came in to see us here, and told me there was no use to make any trouble about that three hundred dollars and said: 'I understand from Mr. Woodburn that you are going to attach the lumber,' and said he was going to Blythesville himself and take up all the lumber and take charge of the whole affairs of Mr. Woodburn, and pay all the just debts and leave Mr. Woodburn out altogether, and he said, 'now just have a little patience and we will pay you every cent,' and asked me to be easy with them, and he was going to ship out all the lumber, and that it would be much easier for them to pay it as the lumber got to St. Louis, or wherever it was shipped, and I told him the best thing he could do was to go over there and see our concern and give them an acceptance of the same and he told me himself that he was sure the lumber ought to be in by February first, and even if it was not, that he would pay us the money, and he told me not to say a word about it, because if people found out that he was going to take charge of the affairs of Mr. Woodburn, they might attach everything and he did not want to have any trouble."

Witness further testified as follows:

"Q.   Have you had any conversation with Mr. Lynn after December 17, 1902, and prior to February 1, 1903?   A.   Yes, sir.

"Q.   State what conversation occurred between you?   A.   It was about February tenth, after he had promised Mr. Treller to pay the money and settle, I said, Mr. Lynn, Mr. Treller told me, and you also told me, that you were going to pay this February first, or sooner, if you possibly could, how is it that the concern has not sent us a check?   He laughed at me and said, 'You fellows are not hard up, the railroad company is not furnishing us cars, and I would like for you to wait a few days.'   You understand he was laughing, and was also telling me that he had got everything Mr. Woodburn had and that Woodburn was out of it altogether."

Witness also testified that Lynn told him if he could not pay him the money he would give him a thing equal to the cash.   Lynn denied that he ever had either of these conversations with Bertig.

There was some correspondence by letter between plaintiff and defendant, in which plaintiff urged payment of the order, and defendant, without acknowledging or denying its liability, referred to the condition of Woodburn's account with it and asked plaintiff to wait until the lumber was all in.

The court declared the law for plaintiff as follows:

"On the question of authority of the defendant's agent to bind the defendant by accepting this order, the court declares that it is not necessary that the plaintiff should prove special authority to accept this particular order, but if the court finds from evidence that this agent had authority to accept orders drawn by J. D. Woodburn in favor of his creditors and that the plaintiff was one of the creditors of said J. D. Woodburn, this would be sufficient authority for the acceptance of the order sued on."

"If the court finds that D. A. Lynn represented defendant as its agent in making the contract with Wood-

burn which were read in evidence and in connection with receiving and shipping lumber so contracted for, then the court declares that he had authority to modify said contracts as to time and manner of payment for said lumber.

"And if he accepted this order on account of the purchase of lumber under said contracts from Woodburn the order was but a change in the time and manner of paying for the lumber and his acceptance thereof is binding on the defendant."

Of its own motion the court declared the law as follows:

"The court declares the law to be that the order in evidence and sued on being ambiguous as to whether or not the $300 was to be paid unconditionally or out of an overplus of Woodburn's lumber, if any, when shipped, if the court finds from all the facts and circumstances in evidence that at the time of the making and acceptance of said order, all the parties understood and intended that the $300 was to be paid out of such overplus after the payment by defendant of $1,500 for account of said Woodburn and further finds that there was no such overplus then the judgment must be for defendant."

The court refused the following instructions asked by plaintiff:

"The court declares that the defendant in its answer admits that it is liable to the plaintiff under and in accordance with the terms of the order sued on; and that said order is an unconditional order for the payment to the plaintiff of the sum of $300 together with any balance that might have been due J. D. Woodburn on lumber and that said order imports a consideration and the court will therefore find for the plaintiff in the sum of three hundred dollars, with interest from September 8, 1903, at six per cent per annum.

"The court declares that the order and acceptance which is sued on in this case is an unconditional order for the payment to the plaintiff of the sum of three hun-

dred dollars and if the court find from the evidence that J. D. Woodburn was indebted to the Bertig-Smythe Company and drew the order sued on in this case on account of such indebtedness and that the same was accepted by the defendant or its agent having authority to accept orders given by Woodburn to his creditors in behalf of the defendant then the court should find for the plaintiff.

"If the court finds that defendant authorized D. A. Lynn to accept for defendant orders given by J. D. Woodburn to the aggregate amount of fifteen hundred dollars this is sufficient proof of his authority to accept the order sued on even though the orders accepted by him aggregated in amount a sum in excess of fifteen hundred dollars."

By agreement of parties the issues were submitted to the court sitting as a jury. The finding and judgment were for defendant. Plaintiff appealed in the usual way.

BLAND, P. J. (after stating the facts).—Is the order sued on ambiguous? If so, the ambiguity arises out of the closing clause or sentence of the order, to-wit: "With all overplus on lumber when shipped." The term *with* "denotes or expresses some situation or relation of nearness, proximity, association, connection, or the like. It is used to denote the accompaniment of cause, means, instrument, etc.; sometimes equivalent to by." [Webster's Dictionary.]

The order may be construed to mean the three hundred dollars was to be paid to plaintiff unconditionally, plus any overplus on lumber to be thereafter shipped or, with equal fidelity to the language employed, it may be construed to mean that the three hundred dollars was to be paid from or out of any overplus on lumber to be thereafter shipped. Its susceptibility to this double construction makes it ambiguous or obscure and for this reason a resort to parol testimony was necessary to show

in what sense the language used was intended by the parties to the instrument. [Martin v. Witty, 104 Mo. App. 262, 78 S. W. 829; Newberry v. Durand, 87 Mo. App. 290; Kenefick v. Type Foundry Co., 72 Mo. App. 381; Reedy Elevator Mfg. Co. v. Mertz & Hale, 80 S. W. (K. C.) 684; Smith v. Alexander, 31 Mo. 193; Shuetz v. Bailey, 40 Mo. 69.] We do not think the court erred in admitting parol evidence in respect to the meaning of the order or in refusing plaintiff's instructions to the effect that the order was an unconditional promise to pay. The parol evidence was contradictory, but that offered by the defendant warranted the finding of the court and for this reason the finding is conclusive on this appeal.

The judgment is affirmed. All concur.